HARVEY MICKENS, JR. *v.* STATE OF INDIANA.

[No. 472A183. Filed December 29, 1972.]

*Gil I. Berry, Jr., Buck, Berry, Landau & Breunig,* of Indianapolis, for appellant.

*Theodore L. Sendak,* Attorney General, *Harry L. Sauce III,* Deputy Attorney General, for appellee.

CASE SUMMARY

BUCHANAN, P.J.—This is an appeal by defendant-appellant, Harvey Mickens, Jr. (Mickens) from a conviction after trial by jury of assault and battery with intent to commit a felony in violation of Ind. Ann. Stat. Sec. 10-401 (Burns 1972 Supp.) We affirm.

FACTS. The facts and evidence most favorable to the State and the judgment are:

At about 1:45 p.m. on June 21, 1971, Martha I. Reed, (Reed) a secretary for the Murat Shrine Club, Inc. (Club) left the Club building at 520 North New Jersey Street in Indianapolis, Indiana, to take the Club's receipts to the bank for deposit. As she walked across the open parking lot to her car, an unmasked man grabbed her arm, turned her around and said he wanted her money. He grabbed for her purse, but she pulled away. After he pointed a gun at her she gave him the canvas money bags imprinted with the Club name and bank numbers, containing $4,068.64 in cash, $815.88 in checks and $43.32 in Bank Americard slips and he then ran from the parking lot. The incident during which Reed observed the man at close range took about two or three minutes.

At the trial Reed testified that the money in the canvas bags was the property of the Club.

Robert Stone (Stone), a member of the Club, was leaving the Club in his car at about 1:45 p.m., on June 21, and he observed a man running across the parking lot with the canvas money bags. He followed the man in his car from the parking lot and he drove along beside him as he ran along Alabama Street for about one hundred yards to the Riley Towers parking lot. Stone was able to observe Mickens face to face.

On June 22, 1971, Reed looked through a large number (perhaps 200 or more) of photographs at police headquarters, but she was unable to make an identification. Two or three days later, Sgt. Berry of the Indianapolis Police Department came to Reed's home and showed her two additional photo-

graphs. She positively identified a photograph of Mickens as the man who had taken the money from her. Stone also positively identified a photograph of Mickens from four photographs shown to him by Sgt. Berry several days after the incident. Both Reed and Stone positively identified Mickens at trial.

Mickens was charged by affidavit with robbery in violation of Ind. Ann. Stat. § 10-4101 (Burns 1956 Repl.) which alleged that the money was the property of "Murat Shrine Club, Inc., a corporation," and that the money (property) was "lawfully held in her possession." Found guilty of assault and battery with intent to commit a felony, he was sentenced to the Indiana State Reformatory for a term of not less than one (1) nor more than ten (10) years.

## ISSUES

ISSUE ONE. Was the State required to prove that the property taken was owned by a legal entity, The Murat Shrine Club Inc., as charged in the affidavit?

ISSUE TWO. Was the in court identification of Mickens so tainted by the pretrial identification procedures as to be insufficient as a matter of law to sustain the conviction?

ISSUE THREE. Did the trial court err in permitting the State to amend its list of witnesses on the day of trial?

As to ISSUE ONE, Mickens contends the State was required to prove that the property taken from Reed was owned by Club as alleged in the affidavit and that by failing to prove that Club was a legal entity on that date, the State failed to meet its burden of proof as to an essential element of the crime. In reply, the State contends ownership is not an essential element of the crime of robbery, nor of the lesser included offense of assault and battery with intent to commit a felony, and that the evidence presented is sufficient to prove that the property was owned by one other than Mickens.

As to ISSUE TWO, Mickens contends the identification of him at trial was insufficient, as a matter of law, to sustain the conviction because it was tainted by the highly suggestive nature of the pretrial identification procedure. In reply, the State asserts Mickens has waived this issue by his failure to present it to the trial court, that the pre trial identification was properly conducted, and that the in court identification was of independent origin and therefore sufficient to sustain the conviction.

As to ISSUE THREE, Mickens contends the State should not have been allowed to amend its list of witnesses on the day of trial because this forced him to either proceed to trial without adequate preparation or to accept the offered continuance, which because of his indigency, would have compelled him to spend additional time in jail, thus denying him due process and the right to a speedy trial. In reply the State contends Mickens waived the issue by his express refusal of a continuance and his failure to show that he was harmed in any way by the granting of the State's motion to amend its list of witnesses.

## DECISION

ISSUE ONE. It is our opinion that the evidence presented as to posesssion of the property taken was sufficient to sustain a conviction of assault and battery with intent to commit a felony.

The material elements of the crime of robbery are (1) an unlawful taking; (2) from the person of another, (3) of any article of value, (4) by violence or putting in fear. *Jackson* v. *State* (1971), 257 Ind. 477, 275 N.E.2d, 538; *Jones* v. *State* (1970), 255 Ind. 57, 262 N.E.2d, 538.

To sustain a conviction for robbery it is not necessary to allege or prove that the property was taken from the owner or

holder of legal title; all that is required of the State is to show that the property taken was not the property of the accused, but of some other person and was taken from the personal possession, presence or protection of another. *Smith* v. *State* (1969), 252 Ind. 148, 246 N.E.2d 765; *Jackson, supra.*

Since the crime of assault and battery with intent to commit a felony, to-wit robbery, is a lesser included offense of the crime of robbery, as charged in the affidavit and supported by the evidence, *Hash* v. *State* (1972), 258 Ind. 692, 284 N.E.2d 770; *Hazlett* v. *State* (1951), 229 Ind. 577, 99 N.E.2d 743, it follows that if proof of actual ownership of the property taken is not necessary to sustain a conviction of robbery, it is not necessary to sustain a conviction of assault and battery with intent to commit the felony of robbery.

The charging affidavit read in part:

". . . Harvey Mickens Jr., on or about the 21st day of June, A.D. 1971, at and in the County of Marion in the State of Indiana, did then and there unlawfully feloneously, forcibly by violence and putting Martha I. Reed in fear, take from the person and possession of the said Martha I. Reed, money then and there of the value of four thousand one hundred and twelve dollars and ninety six cents ($4,112.96) in lawful money, *which property the said Martha I. Reed then* and there lawfully held in her possession and was then and there the property of Murat Shrine Club, Inc., a corporation. . ." (Emphasis supplied.)

While the State did allege that the property taken was owned by Club, a corporation, a failure of direct proof of this ownership by a legal entity is not ground for reversal.

In *Thomason* v. *State* (1970), 255 Ind. 260, 263 N.E.2d, 725, in which appellant's conviction of robbery was affirmed, the Indiana Supreme Court said:

"We likewise find no merit in appellant's second contention that the judgment should be reversed because there is no evidence in the record to prove the allegation

made in the affidavit that the money was in fact the property of 'United Oil Service, Inc., a corporation.' The affidavit also stated that the money was taken from the person of Gary Underwood and that he had lawful possession of this money. It was not contested that Gary Underwood had lawful possession of this money. At the trial, Underwood testified that the money belonged to his employer. We find that in this situation no further proof of ownership was necessary."

See also *Jackson, supra., Finton* v. *State* (1963), 244 Ind. 396, 193 N.E.2d, 134 and *Roberts* v. *State* (1964), 245 Ind. 185, 197 N.E.2d 304.

As Reed's lawful possession of the club's money was never contested, there was more than sufficient evidence to support the conclusion that property was taken from the person of another by one with no authority to do so.

ISSUE TWO. It is our opinion that Mickens has waived the issue of tainted in court identification by his failure to present this issue to the trial court, either in a motion to suppress, objections to identification testimony, or in his Motion to Correct Errors.

At trial, Mickens' counsel cross examined Reed, Stone and Sgt. Berry extensively regarding the pretrial identification procedures used, but neither moved to suppress their testimony nor objected to the in court identification of Mickens by Reed and Stone. The Motion to Correct Errors only alleged that the identification evidence was insufficient because of inadequate opportunity for observation of Mickens by the identifying witnesses and discrepancies between his actual appearance and his appearance as described by the witnesses. It made no mention of pretrial identification procedures nor of inadequate observation at the time of the robbery.

In *Johnson* v. *State* (1972), 257 Ind. 682, 287 N.E.2d 577, the Supreme Court said:

"It must also be shown that the complaining party was harmed by such error (citations) and that he took the

available procedural steps to protect himself against such error. (Citations.)

". . . where a questionable out-of-court identification has been had, defense counsel should take prompt steps to assure that it not be utilized in evidence at the trial and that other evidence has not 'been come at by exploitation of that illegality' (*Wong Sun* v. *United States*, 371 U.S. 471, 488, 83 S.Ct. 407, 9 L. Ed. 2d 441). Better practice dictates that the questions be presented and determined at a pretrial hearing to suppress. Absent prior knowledge of an out-of-court identification, the matter could be gone into by preliminary questioning, . . . at the time the in-court identification testimony is tendered. . . . The disadvantages inherent in awaiting the cross examination stages to raise the question are self evident. . . . we can perceive circumstances that might compel us to hold that prior opportunity to raise the question having not been availed of, an objection to the identification or motion to strike came too late."

Mickens could have raised the issue of tainted in court identification prior to trial, during trial or in his Motion to Correct Errors. Since he failed to present this issue to the trial court at any time, his objection to the pretrial identification procedures comes too late to present any issue for review on appeal. *Gregory* v. *State* (1972), 259 Ind. 295, 286 N.E.2d, 666; *Hardin* v. *State* (1972), 153 Ind. App. 317, 287 N.E.2d, 359; *Davis* v. *State* (1972), 258 Ind. 533, 282 N.E.2d, 805; *Wilson* v. *State* (1970), 253 Ind. 585, 255 N.E. 2d, 817.

ISSUE THREE. It is our opinion that the trial Court did not err in permitting the State to amend its list of witnesses on the day of the trial.

On September 20, 1971, Mickens filed a written Motion for a list of the State's witnesses. The Motion was granted, and on October 1, 1971, the State filed its list of witnesses, naming Martha I. Reed, Police Officer Michael Williams, Sgt. Joe Berry and Robert Stone.

On December 7, 1971, the day of trial, the State made an oral motion to amend its list of witnesses adding Carl Fredericks, Edwin K. Steers, and Sam Huffman, to which Mikens objected.

In the ensuing argument to the Court, the State said these witnesses would give testimony for the purpose of proving ownership of the property taken. The Court offered to grant a continuance to allow Mikens to prepare for these additional witnesses, but Mikens refused!

"*Mr. Young:* Judge, basically the reason I've added these is to show ownership and that the corporation was in existence on that date.

"*Mr. Samper:* Okay, then we have no objection if that is the purpose of the witnesses, your Honor, we'll roll with the jury trial.

"*The Court.* Very well, show the State's Motion granted.

"*Mr. Young:* When I say ownership, I mean ownership of the money.

"*The Court.* You understand that, Mr. Samper?

"*Mr. Samper:* Yes, your Honor.

"*The Court:* And you're still willing to go forward?

"*Mr. Samper:* We're willing to go."

Mikens does not contend that any testimony adduced from any of the three added witnesses tended to prove any issue other than "ownership of the money." As we have already held, proof of that allegation of the affidavit was unnecessary. Mikens cannot possibly have been harmed by the belated amendment of the State's list of witnesses.

The judgment of the trial court is therefore affirmed.

Sullivan and White, JJ., concur.